# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SUZANNE BERISH, ET AL.,

    Plaintiffs,

    v.

SOUTHWESTERN ENERGY
PRODUCTION COMPANY,

    Defendant.

CIVIL ACTION NO. 3:10-CV-1981

(JUDGE CAPUTO)

## **MEMORANDUM**

Before me is Southwestern Energy Production Company's motion for reconsideration of my Order of October 11, 2013 finding that open hole logs and seismic data garnered at the Price No. 1 Well are relevant and are not subject to trade secret protection. The production of the logs and data were ordered to be produced to Plaintiffs.

The motion for reconsideration takes issue with the determination that the logs and seismic data are not trade secrets.

Because Defendant has not shown an error of law or fact, the motion for reconsideration will be denied.

The analysis begins with the Pennsylvania law defining a trade secret and the manner of determining whether something is a trade secret. *See Crum v. Bridgestone/Firestone N. Am. Tire, LLC*, 907 A.2d 578, 585 (Pa. Super. Ct. 2006). There are six elements used to determine whether information must be kept secret so it confers a competitive advantage to the owner of the information. The burden is on SEPCO to demonstrate that the open hole logs and the seismic data are trade secrets. The six elements are:

    1.    The extent to which the information is known outside the owner's business;

2. the extent to which it is known by employees and others in the owner's business;
3. the extent of measures taken by the owner to guard the secrecy of the information;
4. the value of the information to the owner and to his competitors;
5. the amount of effort and money expended by the Owner in developing the information; and,
6. the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Pestco, Inc. v. Assoc. Prods., Inc.*, 880 A.2d 700, 706 (Pa. Super. Ct. 2005).

I will discuss each in order.

1. <u>Extent to which the information is known outside the owner's business.</u>

The information is known to Schlumberger and an unknown number of its employees. Moreover, there is no evidence of any protection SEPCO required Schlumberger to require of its employees of the information learned both while working at Schlumberger and after leaving Schlumberger's employ. In addition to the contractor, presumably Schlumberger, who created the open hole log, another production company was made aware of one of the logs under "strict confidentiality" (Doc. 133-2, ¶ 24). Other than the foregoing statement, there is no disclosure of the number of people privy to the logs, the specific requirements of confidentiality, and the requirements as to confidentiality of those leaving the employ of that production company.

This factor mitigates against finding a trade secret.

2. <u>Extent to which it is known by employees and others in the owner's business.</u>

Twenty-five (25) to fifty (50) SEPCO employees and professionals are aware of this information. While Defendant suggests that 50 out of 2500 employees demonstrates tight distribution, 50 employees in gross numbers is rather broad, and the extent to which they have the ability to make the information known to others is left unanswered by Defendant.

Again, any confidentiality protection implemented by SEPCO is left unanswered. There is no evidence of any requirements on SEPCO's employees regarding the prohibition of dissemination of this information while in the employ of SEPCO and thereafter.

This factor mitigates against classification as a trade secret.

3. <u>Extent of measures taken by the owner to guard the secrecy of the information</u>.

As noted, the Defendant did share the information with the contractor who created the log and another production company. There is no evidence of the extent of confidentiality protection implemented by Defendant that was required of those third parties and their employees who had access to the information, present and past. The files are password protected and require the authorization of "management" (Doc. 133-2, ¶ 30 ). The fact remains the extent of dissemination of the information is really unknown, and more important, there is no evidence of the restrictions or their detail that SEPCO requires to be implemented by those who, for one reason or another, are privy to this information.

Therefore, despite password protection, the fact remains that the efforts at secrecy on the state of this record pales in comparison to the restrictions in *In Re Bass*, 113 S.W.3d 735 (Tex. 2003).

This factor mitigates against classification as a trade secret.

4. <u>The value of the information to its owners and to his competitors.</u>

I determined that the information was valuable to SEPCO and its competitors. I did so on the say so of SEPCO. Howeover, upon review, I am unclear as to how SEPCO's open hole logs for the Price No. 1 Well will translate to value to competitors in an area not proximate to the Price No. 1 Well. Again, there is a lack of proof from Defendant as to how

these open hole logs and seismic data are valuable to competitors.

As a result, this factor is, at best, neutral.

5. <u>The amount of effort and money expended by the owner in developing the information</u>.

SEPCO spent considerable money in developing the data in question. This mitigates in favor of classification as a trade secret.

6. <u>The ease or difficulty with which the information could be properly acquired or duplicated by others</u>.

I originally found that Schlumberger developed the data, and therefore, it would not be difficult for someone other than SEPCO to duplicate it. Defendant rightfully pointed out that this only applied to the open hole logs and not the seismic data. As to the seismic data, other than the cost of the endeavor, I see no evidence that it is otherwise difficult to duplicate the seismic data. Moreover, again, how the seismic data from the Price No. 1 Well translates into use as to other potential well sites is not disclosed by the record.

Defendant points to *In Re Bass*, 113 S.W.3d 735 (Tex. 2003) to support its trade secret argument. In *Bass*, the non-participating royalty interest owners of land sued the mineral estate owner claiming that the implied duty to develop the land was breached. The mineral estate owner had contracted with Exxon to run a geological survey of seismic activity on the <u>entire</u> land. The mineral estate owner never opted to develop the land. In seeking to support their claim of breach of the implied duty to develop the land, the royalty interest owners sought the seismic data because it would "reveal whether development would be profitable." *In Re Bass*, 113 S.W.3d at 738. The Texas Supreme Court agreed the seismic data was a trade secret and did so using the six factors noted above. It is interesting to note only four (4) employees of the owner were privy to the information, and the information was

4

kept in a climate regulated vault accessible to those who had the combination. Be that as it may, in *Bass*, the seismic data was not confined to a well, but rather, was a survey of the entire land in question. This addresses the concern I have expressed about the application of the data beyond the Price No. 1 Well, which is not addressed in this case. In *Bass*, it is apparent that it relates to the entire 22,000 acres.

The other cases cited by Defendants are from other jurisdictions and are factually distinguishable.

This factor mitigates against classification as a trade secret.

## CONCLUSION

Therefore, there are no errors of law, and the error of fact regarding the application of Factor 6 to only the open hole logs has been addressed. For these, and the foregoing reasons, the Motion will be denied.[1]

An appropriate Order follows.

Date: January 16, 2014      /s/ A. Richard Caputo
                                              A. Richard Caputo
                                              United States District Judge

---

[1] This case could have been resolved by defendants advising plaintiffs that open hole logs and the seismic data were trade secrets, thereby implicating the Confidentiality Agreement on file in this case, i.e., defendants would turn over the data and plaintiffs would be obligated to keep the data confidential. Instead, defendants opted to place the issue of whether the open hole logs and the seismic data are trade secrets before the Court for a determination. At argument on their motion for reconsideration, defendants proposed that the Order be vacated, and the parties proceed under the Confidentiality Agreement/Protective Order. Such a negotiation is antithetical to the judicial process.